# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MARTEL LAMBO BEY, <br> *Plaintiff,* <br><br> v. <br><br> OFFICER JOHN DOE, WATERBURY POLICE DEPARTMENT, *et al.,* <br> *Defendants.* | No. 3:24-cv-1307 (SVN) <br><br><br><br><br> April 21, 2025 |

## <u>INITIAL REVIEW ORDER</u>

*Pro se* plaintiff Martel Lambo Bey, a sentenced inmate[1] currently held at the Aileen O'Connor halfway house in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights action under 42 U.S.C. § 1983 against twenty individuals, including three John Does who work for the Waterbury Police Department; Private Attorney Robert Photos; State's Attorney Maureen Platt; Superior Court Judge Joseph Schwartz; Chief Probation Officer Laureen Lefay and Probation Officer Cynthia Jamison; and several DOC employees.[2]  He sues Defendants in their individual and official capacities and seeks damages and orders for injunctive relief.

The Prison Litigation Reform Act ("PLRA") requires that federal courts review complaints

---

[1] The Court may take judicial notice of matters of public record, including that Plaintiff was sentenced under the name Joshua M. Inabinett.  *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information); Compl., ECF No. 1 ¶ 21.  The publicly available DOC website shows that Plaintiff was sentenced on June 1, 2023, to a three-year term of incarceration.
*See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=268760 (last visited Apr. 7, 2025).

[2] Plaintiff's complaint consists of 131 pages, including exhibits referred to in Plaintiff's allegations.  Plaintiff cannot plead the elements of his constitutional claims by relying on any information about a defendant's conduct contained in his attachments to the complaint.  *See Cruz v. Naqvi*, No. 3:21-cv-49 (MPS), 2021 WL 1406102, at *4 (D. Conn. Apr. 14, 2021) (under Federal Rule of Civil Procedure 8, a complaint must be a plain and concise statement of facts constituting a claim recognized by law, and therefore a plaintiff may not file exhibits in lieu of alleging facts in the complaint against defendant).  Nonetheless, the Court refers to Plaintiff's exhibits when necessary for clarification of his claims.

brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[3] Based on this initial review, the Court orders as follows.

## I.    FACTUAL BACKGROUND

Plaintiff is a member of the Moorish Science Temple of America. ECF No. 1 ¶ 1. Plaintiff adopted a religious name and provided notice of his name amendment to the State of Connecticut Probate Court in Waterbury, Connecticut. *Id.* ¶¶ 9, 20. He purchased new identification from R.V. Bey Publishing and discontinued use of his former name, Joshua Martell Inabinett. *Id.* ¶ 21.

In four separate counts, Plaintiff asserts claims arising from the use of his non-Muslim name, Joshua Martell Inabinett, in connection with his arrest, prosecution, and DOC custody. The Court's discussion of each count will summarize the facts relevant to his claims.

---

[3] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (cleaned up; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## II.    DISCUSSION

In this action, Plaintiff principally asserts violation of his religious rights under the United States Constitution and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA").

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). The common elements to all § 1983 claims are: "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983); *id.* ("[I]t is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had.").

Because Plaintiff organizes his allegations under four distinct claims or counts, the Court analyzes the facts and law relevant to each count separately.

A.  <u>Count One</u>

On March 22, 2021, Plaintiff was arrested under the name of Martel Lambo Bey after an allegedly illegal search and seizure procedure.   ECF No. 1 ¶ 22.   Plaintiff provided his identification that he had previously purchased, and was held for bond.  *Id.*  Shortly thereafter, Plaintiff was re-arrested by Defendant Waterbury Police Officer John Doe 1 under the name of Joshua Martel Inabinett, pursuant to an order of Defendant Waterbury Police First Shift Commander Doe (Doe 2).  *Id.* ¶ 23.  Plaintiff asked him why he was being re-arrested under his former name when he had already provided them with his legal identification.  *Id.* ¶ 24.  The Officer responded that he did not know the reason, but he did not think "the [Lieutenant] likes you sovereign guys."  *Id.* ¶ 25. Plaintiff explained that he was a United States citizen but had changed his name as an exercise of his religion.  *Id.* ¶ 26.  Officer Doe 1 stated: "Tell it to the judge."  *Id.* ¶ 27.

In these allegations, Plaintiff claims that Does 1 and 2 violated his First Amendment religious rights by arresting him under his non-Muslim name of Joshua Martel Inabinett. Plaintiff's claims of religious rights deprivation during his March 22, 2021, arrest are barred by the statute of limitations relevant to claims brought under 42 U.S.C. § 1983.  Ordinarily, the statute of limitations is an affirmative defense; however, a district court may dismiss a complaint of its own accord if it is clear from the plaintiff's complaint that the statute of limitations bars the claim. *See Walters v. Indus. & Comm. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitation defense are set forth in the papers plaintiff himself submitted."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a district court may dismiss

a complaint on initial review based on a defense, such as the statute of limitations, that appears on the face of the complaint).

In Connecticut, claims brought under 42 U.S.C. § 1983 are governed by the three-year statute of limitations set forth in Connecticut General States § 52-577. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). However, the "accrual date" from which the statute of limitations begins to run is a "question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Federal law states that accrual for a § 1983 claim starts "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted). Put another way, "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

Here, Plaintiff's claims arising from his arrest under his non-Muslim name accrued at the time of his arrest, which is "the point at which []he could reasonably be presumed to have discovered the facts of h[is] injury." *Davis v. United States*, 430 F. Supp. 2d 67, 74 (D. Conn. 2006). Plaintiff alleges that he was arrested under the name of Joshua Martel Inabinett shortly after he had been arrested under the name Martel Lambo Bey on March 22, 2021, but he does not allege the exact date. ECF No. 1 ¶¶ 22–23. The State of Connecticut's Judicial Branch website provides that Plaintiff was arrested under the name of Joshua Martel Inabinett on March 22, 2021. *See State v. Inabinett*, No. U04W-CR21-0494336-S (Conn. Super. Ct.) (noting "original arrest date" of March 22, 2021). Plaintiff's complaint alleging a constitutional violation on account of the arrest under an incorrect name was filed on August 13, 2024, which is beyond the three-year statute of limitations from the date of his arrest. Accordingly, Count One is untimely and must be dismissed.

"Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for [his] lateness in filing." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004). "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Id.* (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)).

Equitable tolling does not, however, appear to apply to Count One, or to any of the claims in Plaintiff's complaint. The doctrine of equitable tolling "permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Chao v. Russell P. LeFrois Builder*, 291 F.3d 219, 223 (2d Cir. 2002) (cleaned up). Tolling provisions for section 1983 actions generally derive from state law. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007). Connecticut law permits tolling of the statute of limitations due to a continuous course of conduct or fraudulent concealment of the cause of action by the defendants. *See Macellaio v. Newington Police Dep't*, 145 Conn. App. 426, 429 (2013).

Here, Plaintiff's allegations do not support tolling on the basis of either a continuous course of conduct or fraudulent concealment. No alleged facts indicate that Plaintiff retained a continuing relationship with either Doe 1 or 2 so as to support tolling on the basis of a continuing course of conduct related to Plaintiff's religious rights. Nor has Plaintiff alleged facts to support an inference that either Defendant intentionally concealed any fact from him.

Accordingly, Plaintiff's religious deprivation claims under 42 U.S.C. § 1983 arising from his arrest, as alleged in Count One, are dismissed pursuant to 28 U.S.C. § 1915A as not cognizable.

B.  <u>Count Two</u>

In Count Two, Plaintiff asserts several claims arising from his criminal prosecution under his non-Muslim name.  Plaintiff alleges that he hired private attorney, Robert Photos, to represent him in his criminal proceedings and to protect his constitutional rights with respect to his name change.  ECF No. 1 ¶ 32.  Plaintiff alleges that on February 15, 2023, "Defendants" used their "judicial power" to revoke and then raise his bond, remand him to the custody of the State, and "bring" him to trial for violation of a "contract" that held a five-year imprisonment penalty for violation, despite that the "contract" had expired a month earlier.  *Id.* ¶¶ 33, 39.  He alleges he suffered from mental health issues and was on medication when he was "forced to accept the offer of three years and [be] sentenced under the name Joshua Martel Inabinett" on June 1, 2023.  *Id.* ¶ 34.

Plaintiff maintains that Superior Court Judge Joseph Schwartz and State's Attorney Maureen Platt conspired with Attorney Photos to deny Plaintiff his right to practice his religious beliefs and to act with indifference to his rights to use his name Martel Lambo Bey.  *Id.*  ¶¶ 35, 39.  He claims further that on May 23, 2023, Adult Probation employees, Cynthia Jamison and Laureen Lefay conspired with Attorney Photos to retaliate against him "for accusing Photos of not providing equal protection of the law to accomplish ineffective assistance of counsel."  *Id.* ¶ 37.  Finally, Plaintiff asserts that "Defendants" prepared a Presentence Investigative report that was biased and contained perjured statements, in violation of his right to due process.  *Id.* ¶ 38.

1. *Conspiracy*

Plaintiff asserts that his defense attorney, Robert Photos, engaged in a conspiracy with state actors State's Attorney Platt and Judge Schwartz and Probation employees Jamison and Lefay.

For a conspiracy claim under 42 U.S.C. § 1983 or § 1985, which pertains specifically to conspiracy, Plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (internal quotation marks and citations omitted). Thus, the complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Brook v. Ruotolo*, No. 23-1339, 2024 WL 3912831, at *3 (2d Cir. Aug. 23, 2024) (summary order); *see also Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy").

Plaintiff has not alleged facts to support his claim that any Defendants engaged in a conspiracy to violate his civil rights. Plaintiff's conspiracy claim is based on only his conclusory assertions that a conspiracy existed between certain Defendants. But such conclusory assertion cannot support an inference that the parties entered into an agreement to violate Plaintiff's civil rights. Accordingly, all claims for damages in Count Two based on an alleged conspiracy between Defendants Photos, Platt, Schwartz, Jamison, and Lefay are dismissed as not cognizable. *See* 28 U.S.C. § 1915A(b).

### 2. *Judicial Immunity*

In addition, Count Two of Plaintiff's complaint asserts claims against Superior Court Judge Schwartz in connection with his conduct presiding over Plaintiff's criminal prosecution, which is barred by judicial immunity.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir. 2009).[4]  This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  "The law affords judges absolute immunity from personal liability for acts 'committed within their judicial jurisdiction,' however erroneous the act and regardless of motivation." *Tapp v. Champagne*, 164 F. App'x 106, 107 (2d Cir. 2006) (summary order) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  There are two exceptions to this judicial immunity:  "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.  Second, a judge is not immune [from] actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12.

Plaintiff's allegations relate to actions Judge Schwartz allegedly took in his judicial capacity, and do not suggest that any exception to judicial immunity would apply.  Accordingly, the Court dismisses Plaintiff's claims against Judge Schwartz as not cognizable.  *See* 28 U.S.C. § 1915A(b).

### 3.  Prosecutorial Immunity

Plaintiff's complaint does not describe any conduct by Attorney Platt, but indicates that she acted to prosecute him under his non-spiritual name.  ECF No. 1 ¶ 35.  Plaintiff's claim against Attorney Platt is also barred by absolute immunity.

It is well-established that prosecutors are accorded absolute immunity as to "all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation." *Barrett v. United States,* 798 F.2d 565, 571–72 (2d Cir. 1986).  Absolute

---

[4] Absolute immunity also generally bars claims for injunctive relief against judges.  Indeed, by its plain terms, section 1983 bars injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable."  *See* 42 U.S.C. § 1983; *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

immunity applies to "virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate," including decisions concerning "whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995)); *see also Wall v. U.S. Dep't of Just.*, No. 3:09-cv-1066 (DJS), 2010 WL 4923736, at *7 (D. Conn. Nov. 29, 2010) ("It is settled law that the United States Attorney has absolute, unreviewable discretion with respect to whether or not to prosecute a particular case.").

Here, State's Attorney Platt is entitled to absolute prosecutorial immunity for her decision to prosecute Plaintiff under his non-spiritual name. Plaintiff therefore cannot state a cognizable claim against State's Attorney Platt on this basis.

### 4. *Attorney Photos*

Nor can Plaintiff's claim against his attorney, Robert Photos, survive initial review because Photos was not acting under color of state law in his representation of Plaintiff during Plaintiff's criminal prosecution.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999) (citing 42 U.S.C. § 1983). Plaintiff alleges that he hired Attorney Photos. ECF No. 1 ¶ 32. But Attorney Photos is not alleged to have acted under color of law, so Plaintiff's Section 1983 claim against him fails. *See United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'").

Nor are Attorney Photos' actions attributable to the State, such that he could be liable under Section 1983.  To make such a showing, the plaintiff must demonstrate:  "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State."  *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order).  "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state."  *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Plaintiff has not alleged any nonconclusory facts to show that Attorney Photos engaged in conduct that could be considered fairly attributable to the state.  No allegation suggests that Photos was compelled by the State to take the actions of which Plaintiff complains; that there was a sufficiently close nexus between the State and conduct by Attorney Photos; or that the conduct consisted of activity that has traditionally been the exclusive prerogative of the State.  *See Hogan*, 346 F. App'x at 629.

For these reasons, Plaintiff's claim against Attorney Photos is dismissed.  *See* 28 U.S.C. § 1915A(b).

### 5.  *Probation Officers Jamison and Lefay*

Finally, Plaintiff has not stated a cognizable claim in Count Two against Probation Officers Jamison and Lefay.

Plaintiff complains that Probation Officers Jamison and Lefay violated his due process and religious rights arising from their preparation of the presentence investigative report.  ECF No. 1 ¶ 38.  Connecticut probation officers are entitled to absolute immunity in suits for damages arising out of their preparation and submission of presentence reports.  *Peay v. Ajello*, 470 F.3d 65, 69 (2d

11

Cir. 2006); *see also Dorman v. Higgins*, 821 F.2d 133, 136–39 (2d Cir. 1987) (affording absolute immunity from suits for damages to federal probation officers arising out of the preparation and furnishing of presentence reports).

Plaintiff alleges that Jamison and Lefay "used 'evil motive'" when they prepared the presentence investigative report. ECF No. 1 ¶ 38. But "absolute immunity spares the official any scrutiny of his motives," *Dorman*, 821 F.2d at 139, and therefore, "an allegation that an act was done pursuant to a conspiracy" or with "bad faith or with malice," is irrelevant. *Id.*; *Peay*, 470 F.3d at 70. Thus, the Court dismisses Plaintiff's claims against Jamison and Lefay pursuant to 28 U.S.C. § 1915A(b), as not cognizable.

C.  Count Three

In his third count, Plaintiff asserts violation of his First Amendment religious rights and RLUIPA during his incarceration at Carl Robinson Correctional Institution ("Robinson C.I.") and Osborn Correctional Institution ("Osborn C.I."). *See* ECF No. 1 ¶¶ 40–45; *id.* at 59–65. He asserts claims against Commissioner Angel Quiros,[5] Robinson C.I. Warden Caron,[6] District Administrator Rodriguez, DOC Catholic Chaplain Rosado, Sunni Muslim Imam Usman, and the following Osborn C.I. employees: Warden Martin, Records Specialist Shermane Daevis, and Deputy Warden of Operations Ortyl.[7] *Id.* ¶¶ 40–41.

"To assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether

---

[5] Plaintiff refers to "Commissioner Quirros," but the Court takes judicial notice of the Commissioner's biography on the DOC website spelling his name as "Quiros." *See* https://portal.ct.gov/doc (last visited Apr. 10, 2025).
[6] Plaintiff refers to this defendant as "Warden Carron," but the DOC website shows that the name of the warden for Robinson C.I. is spelled "Caron." *See* https://portal.ct.gov/doc/facility/robinson-ci (last visited Apr. 10, 2025).
[7] Plaintiff refers to this defendant as "Warden Orytl," but the DOC website shows that the name of one of the deputy wardens at Osborn C.I. is spelled "Ortyl." *See* https://portal.ct.gov/sots/register-manual/section-iv/dept-of-correction---dept-of-emergency-svs-and-public-protection (last visited Apr. 14, 2025).

the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (cleaned up).  In the context of a Free Exercise Clause claim under section 1983, a plaintiff must establish liability of a defendant by showing that the defendant "act[ed] with at least deliberate indifference in depriving an inmate of the ability to engage in a religious practice." *Id.* at 129.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018) (quoting 42 U.S.C. § 2000cc-1(a)).  A plaintiff may seek injunctive relief under RLUIPA, but not damages.  *See Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (noting that RLUIPA allows for injunctive relief but not for money damages claims against state officers in their individual or official capacities); *Washington v. Gonyea*, 731 F.3d 143, 146 (2d Cir. 2013) (holding that RLUIPA does not create a private right of action against state officials in their individual capacities).

### 1.  Request to Change Name

Plaintiff asserts that Commissioner Quiros, Warden Caron, District Administrator Rodriguez, Warden Martin, Records Specialist Shermane Daevis, and Deputy Warden of Operations Ortyl all denied his requests to be recognized under his spiritual name.  ECF No. 1 ¶¶ 40–41.

In other circuits, a prisoner's adoption of a Muslim name is recognized as an exercise of religious freedom.  *See Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see also Felix v. Rolan*, 833 F.2d 517, 518 (5th Cir. 1987) ("The adoption of Muslim names by inmates practicing that

religion is generally recognized to be an exercise of both first amendment speech and religious freedom."); *Barrett v. Virginia*, 689 F.2d 498, 501 (4th Cir. 1982).  An inmate may have a constitutional interest in using his religious name even in the absence of a legal name change. *Washington v. Adams*, No. 1:09-CV-01666-AWI, 2011 WL 5975646, at *5 (E.D. Cal. Nov. 29, 2011) (declining to find, as a matter of law on a motion to dismiss, that the plaintiff inmate had no protected interest in his non-legal religious name).

Here, it is not clear whether Plaintiff has legally changed his name.  However, at this initial stage in the matter, Plaintiff has sufficiently alleged that the use of his religious or Muslim name is an exercise of his sincerely held beliefs and that the alleged denial of his request to use his Muslim name violates his rights under both the First Amendment and RLUIPA.  It is an open question whether failure to recognize his Muslim name serves legitimate penological objectives or furthers compelling government interests and is the least restrictive means of serving those interests.

Accordingly, the Court will permit Count Three to proceed for service on Plaintiff's individual capacity claims of First Amendment Free Exercise Clause violations against Commissioner Quiros, Warden Caron, District Administrator Rodriguez, Warden Martin, Records Specialist Shermane Daevis, and Deputy Warden of Operations Ortyl.  In addition, the Court will permit Plaintiff to proceed on his official capacity claims of First Amendment Free Exercise Clause violation and RLUIPA violation against Commissioner Quiros, who plausibly could afford Plaintiff injunctive relief to order DOC employees to identify Plaintiff by his religious name.  *Early v. Quiros*, No. 3:24-CV-219 (SVN), 2024 WL 3360648, at *3 (D. Conn. July 10, 2024) (a claim for injunctive relief can only proceed against defendants who "plausibly have the authority to grant

him the prospective relief" (citing *Smith v. Perez*, No. 19-cv-1758 (VAB), 2020 WL 2307643, at *6 (D. Conn. May 8, 2020))).

### 2.  *Worship as Moorish Science Temple of America Moslem*

Plaintiff alleges that he has sought to be recognized as a Moorish Science Temple of America "Moslem." ECF No. 1 ¶ 42.  On December 25, 2023, DOC Chaplain Rosado denied Plaintiff the opportunity to worship under his own vine and fig tree.  *Id.* ¶ 43.  Plaintiff claims he was labeled as a "'Muslim' observing 'Sunni' 'Islam' faith" and subjected to discrimination based on his Moorish ancestry.  *Id.*  Plaintiff also alleges Imam Usman of "'Sunni' 'Islam' faith" denied his request to purchase a fez that is unique to the observance of Islamism by "Moslems" of the Moorish Science Temple of America.  *Id.* ¶¶ 44–45; *see also id.* at 78 (request denial).

These allegations raise concerns about First Amendment Free Exercise Clause and Establishment Clause and Fourteenth Amendment Equal Protection Clause violations.

#### a.  Free Exercise and RLUIPA

Although thin, Plaintiff's allegations are sufficient to suggest that he was not able to worship his sincerely held beliefs due to intentional or deliberately indifferent conduct by Chaplain Rosado and Imam Usman.  Thus, the Court will permit Plaintiff's First Amendment free exercise claims to proceed against Chaplain Rosado and Imam Usman in their individual capacities.  In addition, liberally construing the complaint as alleging ongoing violations of Plaintiff's religious rights, the Court permits Plaintiff to proceed on his official capacity claims against Defendants Rosado and Usman for both ongoing First Amendment free exercise and RLUIPA violations.

#### b.  Establishment Clause

The First Amendment Establishment Clause states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const.

amend. I.  Generally, "the Establishment Clause requires that 'one religious denomination cannot be officially preferred over another.'"  *Roberts v. Fleury*, No. 6:22-cv-918 (GTS/TWD), 2024 WL 1242231, at *10 (N.D.N.Y. Mar. 22, 2024) (citing *Larson v. Valente*, 456 U.S. 228, 244 (1982)). "[T]he Constitution guarantees that the government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so."  *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (cleaned up).

Crediting Plaintiff's allegations as true, the facts suggest that Plaintiff's access to his religious practices was discouraged and that preference was given to Sunni Islam practices. Accordingly, the Court will permit Plaintiff to proceed on a First Amendment Establishment Clause violation against Chaplain Rosado in his individual capacity for damages and his official capacity for injunctive relief to remedy any ongoing First Amendment Establishment Clause violation.

Plaintiff's allegations do not, however, support an inference that Imam Usman afforded preferential treatment to other religions over the Moorish Science Temple of America.

### c.  Equal Protection Clause

To state an equal protection claim, a plaintiff must allege facts showing that:  (1) he has been treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

Here, Plaintiff's allegations, liberally construed, suggest that he was being treated differently than other inmates, based on his religion and Moorish ancestry.  Accordingly, the Court

will permit Plaintiff to proceed on his equal protection claims arising from disparate treatment based on his religion and ancestry for further development of the record against Chaplain Rosado and Imam Usman in their individual and official capacities.

D. Count Four

Plaintiff's fourth count contains allegations about several different circumstances where he was mistreated by different Defendants. He claims that (1) he filed a complaint with Defendant Waterbury Police Detective John Doe (Doe 3) at the Waterbury Police Department in January of 2024 about an alleged attempted murder of him, but was not provided with victim's services (ECF No. 1 ¶¶ 47–50); (2) Robinson C.I. Mailroom Supervisor Jane Doe, Osborn C.I. Mail Handler John Doe, and Robinson C.I. Mail Handler John Doe interfered with his personal and legal mail (*id.* ¶¶ 51–56); (3) DOC Population Management Doe and Robinson C.I. Social Worker Toney subjected him to many transfers between facilities within DOC that adversely affected his mental health (*id.* ¶¶ 57–59); and Warden Martin imposed a grievance restriction on him (*id.* ¶¶ 62–65).[8] Plaintiff claims further that he was subjected to these adverse acts because Defendants conspired to violate his civil rights and retaliated against him due to his efforts to enforce his religious rights. *Id.* ¶ 46.

1. *Conspiracy*

Plaintiff alleges no facts to support the elements of his conspiracy claims. As previously explained, Plaintiff cannot proceed on claims of conspiracy "containing only conclusory, vague,

---

[8] Plaintiff also appears to claim that operating under the name Joshua Martel Inabinett forces him to violate certain federal statutes relating to fraud and use of a fictitious name, and that all legally created contracts between the state of Connecticut and Joshua Martel Inabinett were satisfied on January 15, 2023. ECF No. 1 ¶¶ 60–61. In the first instance, federal criminal statutes do not provide a private right of action. *See Sheehy v. Brown*, 335 F. App'x. 102, 104 (2d Cir. 2009) (summary order) ("To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action."). Moreover, Plaintiff's claims concerning denial of his requests to be identified by his Muslim or spiritual name are proceeding as First Amendment free exercise and RLUIPA claims.

or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Brook*, 2024 WL 3912831, at *3; *see also Storck*, 62 F. Supp. 2d at 940.

### 2. Retaliation

Plaintiff also does not plausibly plead a First Amendment retaliation claim. To plead a retaliation claim, an inmate must plausibly allege: (1) that he engaged in protected speech or conduct; (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech or conduct and the adverse action. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 295 (citation omitted). Thus, such claims must be "supported by specific and detailed factual allegations," and cannot be stated "in wholly conclusory terms." *Id.* (citation omitted).

Consistent with the Second Circuit instruction to approach retaliation claims with some measure of skepticism, the Court will not permit Plaintiff to proceed on his claims based upon his wholly conclusory assertion that Defendants retaliated against Plaintiff due to his exercise of his religious rights.

### 3. Misjoinder

Certain of Plaintiff's claims in Count Four must be dismissed because they are not sufficiently related to his claims regarding religious discrimination. Specifically, Plaintiff's allegations arising from Waterbury Detective John Doe 3's failure to investigate the attempted murder of Plaintiff and Plaintiff's transfers within DOC, which the complaint does not attribute to alleged religious discrimination or retaliation, are not related to his claims about his religious

deprivations, and concern Defendants who were not involved with his religious deprivations. Thus, Plaintiff's complaint does not comply with the federal courts' rules on joinder of claims.

Federal Rule of Civil Procedure 20(a)(2) permits joinder of multiple defendants in one action if:  (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action."  Under Federal Rule of Civil Procedure 21, the Court may "drop a party" or "sever any claim against a party" that it finds to be improperly joined.

In deciding whether to sever a claim for misjoinder, the Court should consider several factors, including whether the claims arise out of the same transaction or occurrence; whether the claims present some common question of law or fact; whether settlement of the claims or judicial economy would be facilitated; whether prejudice would be avoided; and whether different witnesses and documentary proof are required for the separate claims.  *Fletcher v. City of New London*, No. 3:16-cv-241 (MPS), 2017 WL 690533, at *8 (D. Conn. Feb. 21, 2017).  "Misjoinder of unrelated claims against multiple defendants is a particular concern in prisoner-initiated cases because of the applicability of the three strikes and filing fee provisions of the Prison Litigation Reform Act."  *Rosa v. Cook*, No. 3:22-cv-703 (SALM), 2022 WL 2981574, at *3 (D. Conn. July 28, 2022).

The Court finds that Plaintiff's claims related to the conduct of Waterbury Detective Doe 3, DOC Population Management Doe, and Social Worker Toney, are improperly joined in this action.  First, it does not appear from the allegations that the claims against these Defendants arise out of the same transaction, occurrence, or series of transactions as Plaintiff's allegations related to alleged religious discrimination.  Second, it is not clear that there is a question of law or fact

common to *all* Defendants, when Waterbury Detective Doe 3, DOC Population Management Doe, and Social Worker Toney are included as Defendants.  Plaintiff's allegations about these Defendants may give rise to plausible claims of excessive force or deliberate indifference, but they bear no relevance to Plaintiff's predominant concern about the violation of his religious rights. *See Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012) (severance may be appropriate where claims "arise from different circumstances and would require separate analyses").  Retaining all of Plaintiff's claims in one action will hinder the discovery process and require burdensome proofs about distinct legal theories against several different Defendants at trial.

Accordingly, the Court severs the claims arising concerning Waterbury Police Department Detective Doe 3, DOC Population Management Doe, and Social Worker Toney as improperly joined and subject to dismissal under Federal Rule of Civil Procedure 21.  These claims are dismissed without prejudice and may be pursued in separate actions.

The Court will, however, consider the remaining claims concerning mail interference and the imposition of the grievance restriction.  There is at least a potentially plausible connection between these claims and the claims related to religious discrimination, as Plaintiff alleges the mail was addressed to him in his legal name, and it is possible that the grievance restriction was imposed on him as a result of his filing grievances related to alleged religious discrimination.

### 4.  Mail Interference

Plaintiff alleges that he learned on July 23, 2023, that his personal mail addressed to him by his legal name and inmate number sent around June 16, 2023, was returned to the sender by Defendant Osborn C.I. Mail Handler John Doe.  ECF No. 1 ¶¶ 51–52.  An exhibit attached to the complaint indicates this mail was postmarked June 20, 2023, and was addressed to Martel Bey

#268760 at Osborn C.I.  *Id.* at 83 (Exhibits 12C–D).  Plaintiff alleges further that Robinson C.I. Mail Handler Doe opened his legal mail outside of his presence in September 2023, and that his certified legal mail for him was rejected on December 22, 2023, but it was never returned to the sender in accordance with the DOC Administrative Directive.  *Id.* ¶¶ 53–55.  Plaintiff states that "Defendant Jane Doe mailroom handler" is "supervisor of missing documents" at Robinson C.I. *Id.* ¶ 56.  The Court considers whether these allegations support First Amendment free exercise and free flow of mail violations.

a.  First Amendment Free Exercise

To the extent Plaintiff claims that Osborn C.I. Mail Handler John Doe would not accept his mail addressed to his Muslim name—despite the fact that the mail clearly identified Plaintiff by his inmate number—the Court will permit Plaintiff to proceed on a First Amendment free exercise claim for further development against Osborn C.I. Mail Handler John Doe in his individual capacity for damages, related to Plaintiff's incoming personal mail.  However, Plaintiff has not alleged facts to support an inference of a continuing free exercise deprivation by Osborn C.I. Mail Handler Doe.  Accordingly, Plaintiff may not proceed on his First Amendment free exercise claim against Osborn C.I. Mail Handler Doe for injunctive relief in his official capacity.

b.  First Amendment Mail Interference

The Court will also allow Plaintiff to proceed on a First Amendment mail interference claim against Defendant Robinson C.I. Mail Handler Doe in his individual capacity for damages related to opening Plaintiff's legal mail outside of Plaintiff's presence in September of 2023.  "It is well-settled that the First Amendment serves to protect the flow of information to prisoners; thus, any limitations on prisoner access to information must be reasonably related to a legitimate penological interest."  *Rapp v. Barboza*, No. 9:13-CV-0599 (NAM/DEP), 2016 WL 4223974, at

*7 (N.D.N.Y. July 19, 2016) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 89–90 (1987)); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment."). "Restrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation . . . and must be no greater than is necessary or essential to the protection of the governmental interest involved." *Davis*, 320 F.3d at 351. Different types of mail are afforded different levels of protection. Non-legal mail is "afforded less protection than legal mail," and "an isolated failure to mail an inmate's [non-legal] letter does not state a constitutional violation." *Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *7 (S.D.N.Y. Mar. 8, 2012).

Crediting Plaintiff's allegations, the Court will permit Plaintiff to proceed on a First Amendment mail interference claim against Robinson C.I. Mail Handler Doe in his individual capacity for damages, related to alleged interference with Plaintiff's legal mail in September of 2023. As Plaintiff does not allege a continuing violation of mail interference, Plaintiff may not proceed against Robinson C.I. Mail Handler Doe in his official capacity for injunctive relief.

Plaintiff has not, however, alleged facts to reflect that either Robinson C.I. Mail Handler John Doe or Robinson C.I. Mailroom Supervisor Jane Doe was personally involved with the failure to return his certified legal mail to the sender in December of 2023, so that part of Count Four is dismissed.[9] *See Wright*, 21 F.3d at 501 (prohibiting supervisory liability).

### 5. Grievance Restriction

Finally, Plaintiff claims that Warden Martin violated his right to court access when he imposed a grievance restriction permitting Plaintiff to file only one grievance per month. ECF No. 1 ¶ 62.

---

[9] Likewise, Plaintiff's allegations about his property loss caused by a failure to return the rejected certified mail to the sender do not rise to the level of an adequately pleaded constitutional violation that can survive initial review.

The First Amendment, in conjunction with the other constitutional provisions, guarantees prisoners of "the right of access to the courts."[10]  *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Morello v. James*, 810 F.3d 344, 346 (2d Cir. 1987).  Thus, prison officials are prohibited from "actively interfering with inmates' attempts to prepare legal documents . . . or file them."  *Lewis*, 518 U.S. at 350.  But, to prevail in a § 1983 access to the court claim, an inmate-plaintiff must demonstrate that a prison official "actually interfered with his access to the courts or prejudiced an existing action."  *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 345 (N.D.N.Y. 2010).

For denial of access to the courts, an inmate is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants.  *Lewis*, 518 U.S. at 351–54.  To establish an actual injury, an inmate must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a "nonfrivolous" legal claim.  *Christopher*, 536 U.S. at 414–15 ("Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost . . . plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court); *see Lewis*, 518 U.S. at 353 (suggesting that the injury requirement of an access to courts claim is satisfied if an "inmate could demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded").

Here, Plaintiff's allegations fail to identify a nonfrivolous claim that was prejudiced as a result of any alleged interference with his access to the court.  *See Chaney v. Koupash*, No. 04-cv-136 (LEK/DRH), 2008 WL 5423419, at *11 (N.D.N.Y. Dec. 30, 2008) (dismissing access to the court claim, in part because inmate-plaintiffs "failed to state how defendants' actions contributed to plaintiffs' alleged damages or which demonstrable injuries plaintiffs suffered").  Even if

---

[10] The right of access to the courts may arise under the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment.  *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

Plaintiff were unable to file a grievance to satisfy the exhaustion requirement under the PLRA, Plaintiff could still seek redress for his claims in federal court, as his administrative remedies would be considered unavailable. *See* 42 U.S. § 1997e(a) (requiring prisoners to exhaust administrative remedies only to the extent that the remedies are available); *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (finding grievance restriction would not violate the plaintiff's right to petition the government because there was no similar restriction on the plaintiff's right to file civil actions and the PLRA's exhaustion requirement would not bar such actions because the grievance procedure would be deemed unavailable to the plaintiff).

Accordingly, to the extent Plaintiff asserts a claim of deprivation of access to the courts, it is dismissed as not plausible.

## III.    CONCLUSION

**Based on the foregoing, the Court issues the following orders:**

Plaintiff may proceed on the following claims:

(1) First Amendment Free Exercise Clause violations arising from denial of Plaintiff's request to be identified by his religious name—Martel Lambo Bey—against Commissioner Angel Quiros, Warden Caron, District Administrator Rodriguez, Warden Martin, Records Specialist Shermane Daevis, and Deputy Warden of Operations Ortyl, in their individual capacities;

(2) First Amendment Free Exercise Clause and RLUIPA violations due to denial of Plaintiff's request to be identified by his religious name—Martel Lambo Bey—against Commissioner Quiros, in his official capacity;

(3) First Amendment Free Exercise Clause and RLUIPA violations arising from failure to permit Plaintiff to exercise his religious beliefs against Chaplain Rosado and Imam Usman, in their individual and official capacities;

(4) First Amendment Establishment Clause violation arising from failure to recognize Plaintiff's belief as a Moorish Science Temple of America Moslem against Chaplain Rosado, in his individual and official capacities;

(5) Fourteenth Amendment Equal Protection violation arising from Plaintiff's disparate treatment based on his religious beliefs and ancestry against Chaplain Rosado and Imam Usman, in their individual and official capacities;

(6) First Amendment Free Exercise Clause violation against Osborn C.I. Mail Handler John Doe, in his individual capacity; and

(7) First Amendment mail interference violation against Robinson C.I. Mail Handler John Doe, in his individual capacity.

The Court SEVERS as misjoined Plaintiff's allegations and claims against Waterbury Police Department Detective John Doe 3, DOC Population Management Doe, and Social Worker Toney. *See* Fed. R. Civ. P. 20 & 21. Plaintiff may pursue these claims in a separate action.

All other claims are DISMISSED without prejudice. All claims against Waterbury Police Department Officer Doe 1, Waterbury Police Department Shift Commander Doe 2, Attorney Robert Photos, State's Attorney Maureen Platt, Superior Court Judge Joseph Schwartz, Chief Waterbury Adult Probation Officer Laureen Lefay, Waterbury Adult Probation Officer Cynthia Jamison, Robinson C.I. Mailroom Supervisor Doe, and Osborn C.I. Mailroom Supervisor Doe[11] are DISMISSED from this action.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against the Defendants listed above in items one through seven, he may do so without further delay. If

---

[11] Although Osborn C.I. Mailroom Supervisor "John/Jane Doe" was listed as a Defendant, *see* ECF No. 1 at 4, Plaintiff fails to raise any allegations against this person.

Plaintiff selects this option, he shall file a notice on the docket on or before **May 21, 2025**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph.  After Plaintiff files this notice, the Court will begin the effort to serve process on these Defendants in their individual and official capacities as described above.

**Doe Defendants.**  If Plaintiff chooses Option 1, the Court advises him that the Court will not be able to effect service of the complaint on Osborn C.I. Mail Handler Doe and Robinson C.I. Mail Handler Doe because Plaintiff has not provided the first and last names for these Defendants. Plaintiff will have ninety (90) days from the date of appearance of counsel for the first Defendant to appear in this action to file a notice identifying Osborn C.I. Mail Handler Doe and Robinson C.I. Mail Handler Doe by their first and last names.  Plaintiff may determine the identities of Osborn C.I. Mail Handler Doe and Robinson C.I. Mail Handler Doe by reviewing his materials and/or by sending a discovery request to counsel for any other Defendant, once such Defendant appears in this action.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **May 21, 2025**.  **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.**  The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **May 21, 2025**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this

Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1 requires that Plaintiff **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Hartford, Connecticut, this 21st day of April, 2025.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE